ATCHISON, T. & S. F. RY. CO. v. GEE et al.

(Circuit Court, S. D. Iowa, E. D. October 27, 1905.)

INJUNCTION—VIOLATION—PROCEEDINGS FOR CONTEMPT.

Defendants *held* guilty of contempt of court in willfully and persistently violating an injunction restraining them from intimidating or interfering with employés of complainant.

For former opinion, see 139 Fed. 582.

McPHERSON, District Judge. In May, 1904, there was what is called a "lockout" at the shops of the railway company at Ft. Madison, Iowa. This "lockout" was ordered because the employés were just about to enter upon a strike, and the company ordered the machinists discharged, or what is commonly called a "lockout," before the men could strike. All sensible and fair-minded people in this country agree that employés of any corporation can strike singly, collectively, or as a union, at any time, whether they have good reason for doing so or not. There is no law to prevent this, and no court would dare to interfere with their privilege of striking. And it is equally true that all sensible people agree that the company can discharge their men with or without reason at any time the company so elects, and no court dares to attempt to prevent that. Of course, if the men were employed for a specified time, but discharged before the expiration thereof, the men would have a cause of action for damages against the company, and under the same circumstances the company would have a cause of action against the strikers; but this would be an action at law for the recovery of damages only, and for which there could be no writ of injunction. I repeat what I have so often said in this case, as well as in other cases, that laboring men have a perfect right to organize themselves into unions, and have their offices, and meet in secret, and attempt thereby to better their conditions by shorten-

ing their hours, or increasing their wages, or in bringing about any other status for their own betterment. But, when men are out by reason of a "lockout" or by reason of a strike, the places once occupied by them are no longer their places. The company, then, has the right to employ whomsoever it pleases, upon such terms as it may agree upon with the new men, and it has a perfect right to employ men who do not belong to the union, as well as to employ men who do belong to the union. This country recognizes no legal difference between men who belong to organizations, or lodges, or churches, and men who belong to neither. This is a free country, and must be kept so, and every man, whether he belongs to any organization, church, or lodge, or does not, has the right to work for whomsoever he pleases, upon such terms as may be agreed upon, and such men must be and will be protected. And the railway company has the right to be protected in its property and in its rights to employ whomsoever it pleases, and have its new employés work in peace and quiet and by orderly methods. And neither the company nor its new employés must be terrorized or intimidated, to say nothing of being assaulted or wronged, either in person or in property. As self-evident to all honest men and men of sense as the foregoing is, I deem it worthy of repetition, with the desire to emphasize it, so that all men who have any concern about this case, or who take interest therein, to recognize that which all people either do or must recognize. And it is very gratifying to me that all I have said is fully indorsed by Mr. Craig and Mr. Webber, counsel for defendants.

When this "lockout" occured in May, 1904, violence followed. The company was subjected to wrongs by having their property interfered with and injured. Engines and trains were delayed and interfered with, and other abuses heaped upon the company and its men. Soon thereafter a bill in equity was filed in this court, and a restraining order was issued, commanding these defendants and all other former employés to absolutely desist from interference, whether by assault, physical violence or intimidation, or abusive language, such as would put new employés in mental fear. In the early part of this year informations were filed against the four defendants for the violation of that restraining order. It is a remarkable fact to me, an astounding fact, that there never has been the slightest effort made by any one of these parties covered by the restraining order to modify or vacate it. Without doubt their counsel have advised them that the restraining order is legal and was properly issued. Their failure to take such action is a concession that the order was right. There has never been an intimation made to this court that the restraining order ought not to have been issued, but the purpose seems to have been by some of the parties to take the law into their own hands, evidently with the contempt of the court, believing that the order ought not be modified or vacated, but that they would do as they pleased. The result was that in April of this year a full hearing was had as to whether these four defendants were guilty of contempt. Each side was represented by counsel. Two defenses were urged. One of them was that they

were not guilty in fact of violating the orders of this court. The other one was that the judge of this court had said upon a prior occasion to a committee of two men representing the strikers that it was not unlawful to engage in what is commonly called "picketing." I said from the bench, in as strong language as I could use, that I had never said that; that I could not have said it. After hearing the case I reduced my views to writing, and took the pains to say therein that I had not uttered such sentiments. If it had been true, it would not be a defense. But, of course, it would have been in mitigation to such extent that the parties who really believed that the court entertained such views ought not to be fined more than a nominal sum.

During all that hearing I partially believed, but only in part, that the committee of two men had conveyed such information to the accused. But I thought I would give the defendants the benefit of the doubt on the subject. Hence it was I directed the clerk of this court to send a copy of my written opinion (139 Fed. 582) to each of the defendants, and it is admitted by all of them that in July last they received a copy thereof from the clerk of this court. I purposely delayed entering judgment, because I thought they were entitled to consideration, and that they should be given an opportunity of making known to the court whether the plea of mitigation was in good faith or whether it was a sham and subterfuge. I am now satisfied beyond question that as to three of these defendants such pretended defense was a sham and subterfuge, and was not honestly made by the defendants. I do not in the slighest degree believe but that their counsel acted in the utmost good faith, but they have been deceived by at least three of these defendants. I use this language, strong as it may seem, because the conduct of three of these defendants, since receiving my views in open court and since receiving a copy of my written opinion, has been the same. They have pursued the same course they pursued before, namely, one of intimidation, ugly language, ugly conduct, towards the company and towards the new employés. It is true they substituted for the word "scab" another word, intending to be understood as meaning the same, and which is understood by all as meaning the same as "scab." A man is not a scab who engages in honest employment, seeking to live an upright life and earn a livelihood for his family, school his children, and conduct himself as a decent citizen; and such use of such epithets becomes tiresome to all decent people. I narrate these facts to show that three of these defendants, at least, have been contemptuous in the very extreme ever since the restraining order was issued more than a year ago; and it is unnecessary for them to say that they have no contempt for this court. I do not suppose that they do have for this court, nor for any officer thereof, a contempt; but it is a subterfuge to urge such a defense as that. It is a contempt for the law represented by the orders of this court, with which the parties are accused, and with which they have been convicted. Meeting daily, posting themselves on picket lines where the new employés must pass and repass, and most of the new men, at least,

behaving themselves, seeking to avoid trouble, threatening themselves to quit work unless they can be protected. And the supreme question before the court is, shall such men be protected? And, unless they are, proceedings in court are a farce. And if judicial proceedings are to be sneered at, courts ought not be tolerated, because whenever courts fail to do their duty or have their proceedings respected they become farcical.

These proceedings are not agreeable to me. I would avoid them if I could. It is practically converting this court into a police court. But no other remedy seems to be attainable. And it is too late for any man, judge, lawyer, or layman, to say that there can be any debate about the propriety or legality of these proceedings. They are recognized by all the courts, federal and state, and I do not dare, as a judge of this court, acting under my oath and guided by my conscience, to seek to avoid these proceedings because they are not agreeable. They are distasteful, because I know in advance how these decisions will be regarded by the ignorant and the vicious, and how the court will be misrepresented. But that is no reason why I should be recreant to my duty, or why I should not act as in my judgment I ought to act. It would be infinitely more of a pleasure to me to send these men back to their families than it is to send them to jail. But it must be kept in mind that men must be sent to jail, even though they thereby bring punishment upon innocent members of their families and friends. If this is any excuse, but few guilty men can be convicted. It is no reason why I should not act. At the hearing last spring the term "picketing" was used by all the witnesses and by the accused hundreds and hundreds of times. Now it is not called "picketing," but the same acts of intimidation and opprobrious epithets are called "reporting"; the pretense being that their acts could be justified by changing the name. It is idle to say, and even silly to conclude, that any court can thus be persuaded. It is of no concern to the court, nor to any person, for what paper or bulletin any person reports. Whether the defendants, to obtain their allowances, must do picketing, I do not know. But it is none the less violence, none the less intimidation, none the less lawlessness, to call their acts by some other name.

I was in hopes that at this hearing, which occupied nearly a full day, largely by hearing testimony, it would appear that my admonition in my opinion had been heeded, and I am glad to say that in my judgment Mr. Randall has heeded, in the main at least. There is no showing here, since my opinion was made known, that he has been engaged in any violation of the restraining order, and it is with much satisfaction that I announce that I will only subject him to a nominal punishment of a fine of $25, while I am compelled to administer something like a substantial punishment on the other three. Their cases are different in enormity as to the offense, and the judgment will be that the defendant L. C. Neyer be committed to jail for four months, and the defendant Gus Hult be committed to jail for three months, and the defendant William

Morley be committed to jail for three months. These parties and all others must understand, and they will understand, either by information from this court or from other sources, that this government of ours is one of law, that peaceable men shall be protected, and that lawless men must pay a penalty. It is for others to say whether or not they will take warning, or whether they will arrogate to themselves the pretended right of so conducting themselves as to take, not the law, but contempt for the law, into their own hands.

I have reduced these views to writing and filed them with the clerk to the end that all who have any concern in knowing what my views are may read, and neither misunderstand, nor misconstrue, nor falsely state, what I have said about this case.